IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA McCORNELL, | ) | CASE NO. 1:13 CV 2065 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

# Introduction

**A.      Nature of the case and proceedings**

Before me by referral[1] is an action by Angela McCornell under 42 U.S.C. § 405(g)

for judicial review of the final decision of the Commissioner of Social Security denying her

application for supplemental security income.[2] The Commissioner has answered[3] and filed

the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the

---

[1] The matter was referred to me under Local Rule 72.2 in a non-document entry dated September 18, 2013.

[2] ECF # 1.

[3] ECF # 13.

[4] ECF # 14.

[5] ECF # 5.

[6] ECF # 16.

parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.  Background facts and decision of the Administrative Law Judge ("ALJ")**

McCornell, who was 43 years old at the time of the decision,[11] has a tenth grade education and has past relevant work as a self-employed babysitter and self-employed hair stylist.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that McCornell had the following severe impairments: multiple sclerosis, depression, spinal strain, and history of headaches.[13]

After concluding that the relevant impairments did not meet or equal a listing, including, specifically, the listing for multiple sclerosis at Listing § 11.09 and for mental impairments at Listing § 12.04,[14] the ALJ made the following finding regarding McCornell's residual functional capacity ("RFC"):

---

[7] ECF # 22 (Commissioner's brief); ECF # 21 (McCornell's brief).

[8] ECF # 23 (Commissioner's charts); ECF # 21-1 (McCornell's charts).

[9] ECF # 20 (McCornell's fact sheet).

[10] ECF # 24.

[11] ECF # 14, Transcript ("Tr.") at 93.

[12] *Id.*

[13] *Id.* at 87.

[14] *Id.* at 87-88.

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545) to perform light work as defined in 20 CFR 416.967(b) except:

- She cannot climb ladders, ropes, and scaffolds, and can occasionally climb ramps and stairs;
- She can occasionally balance, stoop, kneel, crouch, and crawl;
- She must avoid extreme heat;
- She can perform tasks in work settings where duties are routine and predictable, with infrequent changes, and involving superficial and occasional interactions (20 CFR 404.1569a).[15]

Based on this RFC, and with testimony from the vocational expert ("VE"), the ALJ decided that this RFC precluded McCornell from performing her past relevant work as a self-employed babysitter and a self-employed hair stylist.[16]

Similarly, based on an answer to a hypothetical question posed to the VE at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that McCornell could perform.[17] The ALJ, therefore, found McCornell not under a disability.[18]

## C.    Issues on judicial review and decision

McCornell asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, McCornell presents the following two issues for judicial review:

_____

[15] *Id.* at 88-89.

[16] *Id.* at 93.

[17] *Id.* at 93-94.

[18] *Id.* at 94.

-3-

- Whether the ALJ's assessment of McCornell's residual functional capacity is supported by substantial evidence.

- Whether the vocational expert's testimony can be relied upon to meet the Commissioner's burden at step five of the sequential evaluation process.[19]

For the reasons that follow, I will recommend that the ALJ's finding of no disability is supported by substantial evidence and, therefore, should be affirmed.

## Analysis

### A.    Standards of review

#### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

_____

[19] ECF # 21 at 1.

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 416.927(d)(2) (for supplemental security income claims).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2) for supplemental security income claims. Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*, referring to the regulations for disability insurance benefits claims.

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

-12-

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

### B.    Application of standards

This matter once again presents an issue of whether an ALJ's handling of the opinion of treating medical source sufficiently conforms to the norms set forth by the Sixth Circuit. Because a determination of that question – which most directly arises under the first issue raise by McCornell – in effect resolves the second issue presented here, the first issue will be addressed below in some detail.

As was confirmed during the oral argument, the outcome here turns on whether the ALJ properly weighed the functional opinion of McCornell's treating neurologist from the Cleveland Clinic, Daniel Ontaneda, M.D. More specifically, resolution of the first issue rests on whether the ALJ properly ascribed little weight to the December 23, 2011 "mental capacity" functional opinion of Dr. Ontaneda[71] in favor of assigning greater weight to the functional opinions of: (1) Joseph Konieczny, Ph.D., a consulting examiner (November 25,

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] Tr. at 92.

-13-

2011);[72] (2) William Bolz, M.D., a state agency reviewing physician (November 10, 2011);[73] (3) Michael Parsons, Ph.D., an examining psychologist (October 14, 2011);[74] and (4) Roseann Umana, Ph.D., a state agency reviewing psychologist ((December 2, 2011).[75]

It is important to observe initially that McCornell contends that the ALJ in this case was, to some degree, engaged in a false "apples to oranges" comparison of Dr. Ontaneda's opinion with the other opinions listed above. McCornell argues that the key debilitating symptom of her MS in connection with overall mental limitations is not, strictly speaking, deficits in cognition or memory, but depression.[76] Thus, she maintains, because Dr. Ontaneda's functional opinion was based on his view of her MS symptoms as a whole – something about which he had "in depth knowledge" – it was error to give lesser weight to his opinion in contrast to that given to opinions from non-examining sources.[77] Moreover, she argues, the ALJ here violated the precepts of *Gayheart* by applying stricter scrutiny to Dr. Ontenada's opinion than was applied to other opinions.[78]

---

[72] *Id.* at 91.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 91-92.

[76] ECF # 21 at 15.

[77] *Id.* at 16.

[78] *Id.* at 16-17.

That said, however, the ALJ specifically addressed McCornell's depression, finding that "the claimant's neurologists reported normal psychiatric signs, including on March 3, 2011, when Dr. Ontaneda noted that she was well groomed, alert and oriented, had normal attention and concentration, normal recent and remote memory, and normal affect."[79] Further, the ALJ also noted that a subsequent note by Dr. Ontaneda in May 2011 recorded that while McCornell "had a depressed and reactive affect," she was nevertheless "fully cooperative, and attention and concentration appear normal."[80]

Perhaps more important, the ALJ then took note of the October 14, 2011 report of Michael Parsons, Ph.D., a psychologist at the Cleveland Clinic where, as noted, Dr. Ontaneda also practices. As recounted by the ALJ, Dr. Parsons's report stated that McCornell's "problem solving was slow but logically organized," reflecting a "cognitive baseline [that] was low average."[81] The ALJ also observed that Dr. Parsons's report further found that "[a]ttention, concentration and working memory were all average to high average, even on tests [of] sensitive multiple sclerosis patients."[82] Dr. Parsons concluded that McCornell's "perception of her cognition is colored by depression" and so recommended psychotherapy so that she would not be "more debilitated by multiple sclerosis than is necessary."[83]

---

[79] Tr. at 91 (citing exhibit).

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

-15-

Just as important as these aspects of Dr. Parsons's report that are noted by the ALJ are the portions not explicitly mentioned. In the report, he observes that while McCornell's affect "showed restricted range and variability with a downcast appearance," she was nevertheless able "to put forth a consistent effort throughout the evaluation" and performed in the "valid range" on a "formal test of task related effort."[84]

In the end, the ALJ concluded that the functional capacity findings of Drs. Konieczny, Parsons and Umana were "consistent,"[85] and as such "inconsistent" with Dr. Ontaneda's opinion that McCornell has poor abilities to follow simple instructions, behave in an emotionally stable manner, function without special supervision, or maintain attention.[86] Although the ALJ did note that the inconsistencies included findings in the areas of memory and cognition deficits, he also specifically did not limit his finding to those areas.[87]

In sum, even if the review here is limited to functional capacity limitations occurring as a result of depression and not some other mental condition – a fact that cannot be established by examining Dr. Ontaneda's opinion, which does not explicitly state that the limitations he puts forward are largely, or exclusively, based on McCornell's depression – the ALJ has provided multiple reasons for giving Dr. Ontaneda's opinion less weight than was given other opinions. Specifically, as detailed above, the ALJ found that the functional

---

[84] *Id.* at 630.

[85] *Id.* at 91.

[86] *Id.* at 92.

[87] *Id.*

opinions of Drs. Konieczny and Umana were consistent with the clinical findings of Dr. Parsons and that Dr. Ontaneda's opinion was inconsistent with his own earlier findings, as well as with the group of opinions cited above.

In making this determination, the ALJ did not violate any requirement of the treating physician rule. *Blakely* requires that a treating source opinion, even if not accorded controlling weight, be treated with "deference" and must be weighed according to the applicable standards.[88] If the treating source opinion is to be discounted, the reasons why must be justifiable – *i.e.*, good reasons – and be stated on the record with sufficient specificity as to make it clear to a reviewing court what weight was given and why.[89] If the reasons meet this standard, they may be brief.[90]

Moreover, if the opinions of a non-treating source are to receive greater weight than that of the treating source, *Gayheart* teaches that the opinions of the non-treating source may not be subjected to a lesser standard of review than that of the treating source.[91] But there is no evidence of that in this opinion. McCornell argues that because Dr. Bolz opined that McCornell could perform medium work – a conclusion the ALJ did not adopt – and that Heather Prayor-Patterson, Ph.D., an examining consultant, did not support her findings with treatment notes, the ALJ unfairly applied a harsher standard in Dr. Ontaneda's case by

---

[88] *Blakely*, 581 F.3d at 408.

[89] *Ealy*, 594 F.3d at 514.

[90] *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).

[91] *Gayheart*, 710 F.3d at 380.

grounding the lesser weight given to his opinion on the inconsistencies of that opinion with the other specified evidence.

In fact, in the case of Dr. Prayor-Patterson, the ALJ specifically noted her lack of treatment and examination notes and further noted this lack of evidentiary support precluded assigning her opinion greater weight.[92] Thus, there is perfect congruity in the treatment given by the ALJ in this instance to the treatment accorded to Dr. Ontaneda. Similarly, the ALJ explicitly noted that Dr. Bolz's opinion on medium work was not accepted due to later evidence on McCornell's functional capacity that Dr. Bolz did not have the opportunity to review. As such, the ALJ observed on the record that, with this exception, Dr. Bolz's opinion "is generally accepted" as supportive of the functional capacity found by the ALJ.[93]

Again, the ALJ is not guilty of totally overlooking a defect in the other opinions that he noticed in and used against Dr. Ontaneda (which was the situation condemned in *Gayheart*), but rather the ALJ was consistent in either reducing the weight given or carving out a stated exception to that weight when finding a defect in the supporting evidence as related to all three opinions.

Thus, for the above reasons, I recommend finding that the ALJ's assessment of McCornell's RFC is supported by substantial evidence. That said, if the RFC is supported by substantial evidence, there is no issue with the hypothetical question posed to the VE, which was derived from the RFC.

---

[92] Tr. at 92.

[93] *Id.*

## Conclusion

For the reasons stated above, I recommend finding that substantial evidence supports the finding of the Commissioner that McCornell had no disability. Accordingly, I recommend that the decision of the Commissioner denying McCornell supplemental security income be affirmed.

Dated:  May 14, 2014                                    s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[94]

---

[94] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).